IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DUANE ANGLETON, et al.,

*Plaintiff*,

vs.

Case No. 08-1255-EFM-KMH

COFFEYVILLE RESOURCES
REFINING & MARKETING, LLC,

*Defendant.*

**MEMORANDUM AND ORDER**

Presently before this Court is Defendant Coffeyville Resources Refining & Marketing's Motion to Dismiss this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject-matter jurisdiction. (Doc. 6). This motion has been fully briefed. For the following reasons this Court denies the motion.

**I. Facts**[1]

The Defendant owns and operates an oil refinery in Coffeyville, Kansas. The refinery processes crude oil and produces gasoline and diesel fuels. On July 1, 2007, the town of Coffeyville experienced severe flooding along the Verdigris River. Flood waters from the Verdigris River

---

[1]The facts are derived from the Plaintiff's Amended Complaint (Doc. 13) and Defendant's Answer (Doc. 17).

reached the refinery and at least 9,000 gallons of crude oil, diesel, and other pollutants were released from the refinery into the water.

The Plaintiffs are property owners who reside in the states of Kansas and Oklahoma. They all reside or own property in close proximity to the Verdigris River, downstream from the Defendant's refinery.

Plaintiffs claim that they suffered damages as a result of the oil and pollutants being released from the refinery. They brought suit in this Court asserting subject-matter jurisdiction under the Oil Pollution Act of 1990 ("OPA").[2]

On September 19, 2008, Defendant filed a Motion to Dismiss for Lack of Jurisdiction, arguing that the OPA does not apply to this case. Defendant offers two arguments to support its motion. The first argument is that the Verdigris River does not qualify as "navigable waters"[3] under the OPA. The second argument is that even if the Verdigris River is found to be "navigable waters", the Coffeyville Refinery did not spill oil into the river, but rather into the flood waters, which are distinct from the river and do not qualify themselves as "navigable waters".

**II. Analysis**

Defendant's two arguments focus on the meanings of the terms "navigable waters" and "discharge" within the statute. The OPA states:

> Notwithstanding any other provision or rule of law, and subject to the provisions of this Act, each responsible party for a vessel or a facility from which oil *is discharged*, or which poses the substantial threat of a discharge of oil, into or upon the *navigable waters* or adjoining shorelines or the exclusive economic zone is liable for the

---

[2]Oil Pollution Act, 33 U.S.C. §2717 (1990).

[3]*Id.* at §2702.

removal costs and damages specified in subsection (b) of this section that result from such incident.[4]

The OPA defines "navigable waters" as "the waters of the United States, including the territorial sea."[5] It is the interpretation of these terms in the OPA that control the outcome of this motion before the Court.

**A. *Oil from the facility was discharged into the Verdigris River, which is a waters of the United States.***

Defendant's argument that the oil was discharged into the flood waters and not into the river in intriguing. "Discharge" is defined in the OPA as an "emission" and is seemingly an event that can only occur once.[6] Further, the Supreme Court has found that the term "waters" in the context of the Federal Water Pollution Control Act,[7] commonly referred to as the Clean Water Act ("CWA"), does not refer to fleeting or ephemeral flows,[8] a category that would likely include flood waters, if they are indeed separate from the river.

However, Defendant admitted in its Answer that "oil from the facility was discharged into the Verdigris River, which is a waters of the United States.[9] Therefore, since "judicial admissions are formal admissions . . . which have the effect of withdrawing a fact from issue and dispensing

---

[4]*Id.* (emphasis added).

[5]*Id.* at §2701

[6]*Id.* ("'Discharge' means any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping.")

[7]Federal Water Pollution Control Act (Clean Water Act), §§33 U.S.C. 1251 - 1376 (1948).

[8]*Rapanos v. U.S.*, 126 S.Ct 2208, 2221 (2006).

[9]Pls.' Am. Compl., ¶ 6 (Doc. 13); Def.'s Answer, ¶ 6 (Doc. 17).

wholly with the need for proof of the fact,"[10] we find that the oil was discharged from the facility into the Verdigris River, thus defeating this argument of the Defendant.

**B.** *The Verdigris River qualifies as "navigable waters."*

**1.** *Congress intended the term "navigable waters" to have the same meaning under the Oil Pollution Act as under the Clean Water Act, and to be interpreted accordingly.*

Defendant argues that the OPA does not apply in this case because the Verdigris River does not qualify as "navigable waters" under the statute. Defendant wants the term "navigable waters" to be interpreted very narrowly, arguing that under the OPA a body of water must be navigable-in-fact to be considered "navigable waters". This Court finds that approach is not legally justifiable.

Case law regarding the interpretation of OPA terms is sparse, but the CWA, a similar statute, has ample authority on point. The Fifth Circuit Court of Appeals, in *Rice v. Harken Exploration Company* ("Rice 2"),[11] an OPA case that involved alleged oil contamination of groundwater, concluded that it was Congress' intent for the term "navigable waters" to have the same meaning in both the OPA and the CWA. We agree with the Fifth Circuit and find the court's conclusion to be firmly supported by the Congressional Record.[12] Accordingly, the plethora of case law on CWA regarding interpretation of "navigable waters" can provide strong guidance as we turn to the OPA.

---

[10] *Guidry v. Sheet Metal Workers Intern. Ass'n, Local No. 9*, 10 F.3d 700, 716 (1993).

[11] *Rice v. Harken Exploration Company*, 250 F.3d 264, 267 (2001).

[12] H.R. CONF. REP. NO. 101-653, at 102 (1990), *reprinted in* 1990 U.S.C.C.A.N. 779, 780 ("In each case, these [CWA] definitions shall have the same meaning in this legislation [OPA] as they do under the [CWA] and shall be interpreted accordingly."); *see also* S. REP. 101-94, at 11 (1990), *reprinted in* 1990 U.S.C.C.A.N. 722, 733 ("The reported bill [OPA] covers all the bodies of water and resources covered by section 311 [CWA], including the inland waters of the United States . . .").

Defendant argues against using CWA case law to guide our approach and instead argues that this Court use a narrower interpretation for OPA terms than courts have applied to CWA terms. In defense of this argument, defendant offers *Rice v. Harken Exploration Company* ("*Rice 1*"),[13] the predecessor to the abovementioned appeal. In *Rice 1*, the District Court took the approach that terms in the OPA should be interpreted more narrowly than the same terms in the CWA and found that the OPA should not be applicable to "an onshore oil production facility that is over 500 miles from any ocean or shoreline."[14] Though the Fifth Circuit affirmed the ultimate finding on appeal, it disagreed with the approach of the lower court and decided that the terms of the OPA and the CWA should be interpreted the same way.

Defendant also relies on *Harris v. Oil Reclaiming Co.*,[15] a case from the District Court of Kansas that was decided after *Rice 1* but before *Rice 2*. The court in *Harris* cited favorably the approach of *Rice 1* in interpreting terms of the OPA more narrowly than the same terms in the CWA. However, to say that *Harris* fully endorsed or adopted that approach would be to mischaracterize the court's position. Also, with regards to any other conclusions reached in these two cases, it is important to note that they both focused on oil contamination that allegedly occurred miles from any stream, river, or tributary. The Coffeyville Refinery, in contrast, sits on the banks of the Verdigris River.

---

[13] *Rice v. Harken Exploration*, 89 F.Supp.2d 820 (N.D.Tex.1999).

[14] *Id.* at 826.

[15] *Harris v. Oil Reclaiming Co.*, 94 F.Supp.2d 1210 (D. Kan. 2000).

**2. *Incorporating CWA case law into OPA interpretation, the Verdigris River qualifies as "navigable waters."***

Since *Rice 2* and *Harris*, the Supreme Court has twice clarified and narrowed the scope of "navigable waters" as included in the CWA. In *Solid Waste Agency of Northern Cook County v. United Army Corp of Engineers (SWANCC)*,[16] the Court disallowed the Army Corps of Engineers' "Migratory Bird Rule", a regulation which provided the Corps jurisdiction over ground trenches that fill with water and may be used as resting places for birds during migration. The Court declared that the CWA requires a "significant nexus" between the waters to be regulated and "navigable waters".

In *Rapanos v. U.S.*[17], the Supreme Court responded to and dismissed a similar argument to the one being made in the motion before this Court. In *Rapanos* the Court addressed the assertion that "the terms 'navigable waters' and 'waters of the United States' in the [CWA] must be limited to the traditional definition . . . which required that the 'waters' be navigable-in-fact, or susceptible of being rendered so." The Court disagreed with that argument and found that "'navigable waters' includes something more than traditional navigable waters. [And] . . . is broader than the traditional understanding of that term."[18]

The Tenth Circuit also offers guidance in *U.S. v. Hubenka*.[19] The Circuit Court considered the "significant nexus" test offered in *SWANCC* and found that under the CWA, "the potential for

---

[16] 531 U.S. 159 (2001).

[17] 547 U.S. 715 (2006).

[18] *Id*. at 730-731.

[19] 438 F.3d 1026 (10th Cir. 2006).

pollutants to migrate from a tributary to navigable waters downstream constitutes a "significant nexus" between those waters."[20]

In light of these cases, and in light of Congress' intent that terms in the OPA be interpreted in the same manner as terms in the CWA, we find that the Verdigris River, at the point where the discharge occurred, qualifies as "navigable waters" under the OPA. Without needing to embark on the factually intensive task of analyzing whether the river is navigable-in-fact at this point, and without even needing to decide if that stretch of the Verdigris River is "navigable waters" in its own right, we can decisively say that the Verdigris River meets the "significant nexus" test under the Tenth Circuit clarification of that test. At the very least, the Verdigris River, as part of the McClellan-Kerr Arkansas River Navigation System, is navigable-in-fact near Tulsa, Oklahoma. This is actually a point that Defendant argues in support of it's motion. We find that Tulsa is not too far from Coffeyville to destroy a "significant nexus."

Waters from the Verdigris River in Coffeyville can be expected to reach the decidedly navigable point near Tulsa. This creates the potential for pollutants to migrate to navigable waters downstream, thus establishing a solid "significant nexus" between those two points of the river. The point upstream, where the discharge occurred, is bound up with "navigable waters of the United States" and therefore included within the jurisdiction of the OPA. Accordingly, the Court denies Defendant's Motion to Dismiss for lack of subject-matter jurisdiction.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant Coffeyville Resources Refining & Marketing's Motion to Dismiss (Doc.6) is hereby DENIED.

---

[20] *Id.* at 1034.

**IT IS SO ORDERED**.

Dated this 22nd day of May, 2009, in Wichita, Kansas.

                                              /s Eric F. Melgren  
                                              ERIC F. MELGREN  
                                              UNITED STATES DISTRICT JUDGE