**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| DUANE ANGLETON, BETTY ANGLETON, MICHAEL R. BRADY, GEORGE CHRONISTER, LOUISE STILLS, COOK TEXAS PROPERTIES, LLC, JERROD M. DETTLE and MARY E. DETTLE d/b/a BLUEJACKET OIL & CATTLE COMPANY, JOHNNY DODSON, KRINA CORPORATION, SANJIVKUMAR GANDHI, KRINA GANDHI, RENEE HELPHINGSTINE, TY JOHNSON, TAMMY JOHNSON, MARK LIVELY, EIGHT STREET CAR WASH, INC., LMT ENTERPRISE, INC., KAREN PFISTER, BOBBY SHAFER, JR. and GINA SHAFER d/b/a TRIPLE B. SALES, and LARRY WYRICK, individually and on behalf of his agricultural landlords,<br><br>*Plaintiffs*,<br><br>vs.<br><br>COFFEYVILLE RESOURCES REFINING & MARKETING, LLC,<br><br>*Defendant.* | Case No. 08-1255-EFM |

**MEMORANDUM AND ORDER**

Plaintiffs are seeking recovery under the Oil Pollution Act of 1990 ("OPA") for damages that they allegedly incurred as a result of 9,000 gallons of crude oil, diesel, and other pollutants being

-1-

released from Defendant's refinery into the Verdigris River. Now before the Court is Defendant's motion to limit the claims of Plaintiff Larry Wyrick to the real party in interest (Doc. 67).

## BACKGROUND

Defendant owns and operates an oil refinery in Coffeyville, Kansas. The refinery processes crude oil and produces gasoline and diesel fuels. On July 1, 2007, the town of Coffeyville experienced severe flooding along the Verdigris River. Flood waters from the Verdigris River reached the refinery and at least 9,000 gallons of crude oil, diesel, and other pollutants were released from it. According to Plaintiffs, these pollutants were carried downstream into Oklahoma.

Plaintiff Wyrick farms land that is adjacent to the Verdigris River in Oklahoma. Some of this land is owned by others. According to Wyrick's deposition testimony, he and the owners of this land share in the proceeds from the grain raised thereon: Wyrick receives two-thirds and the landlords receive one-third. Except for one-third of the chemical and fertilizer costs, which the landlords pay, Wyrick is responsible for all of the costs associated with producing the grain. At the time the pollutants were released from Defendant's refinery, Wyrick had crops growing on his landlords' land. Wyrick alleges that Defendant's pollutants damaged these crops and the land there were growing on.

Sometime after July 1, pursuant to 33 U.S.C. § 2713, Wyrick filed a notice of claim with Defendant. In this notice, Wyrick stated that he was seeking recovery for damage done to his land and the crops growing thereon. He also stated that he was seeking recovery for damage done to the land he farmed for others and the crops growing thereon. Wyrick's claim was not settled. As a result, Wyrick joined the present suit. As noted in the heading of Plaintiffs'

complaint, Wyrick is seeking recovery not only for himself, but also for his agricultural landlords.

On October 2, 2009, Defendant filed a motion to limit the claims of Larry Wyrick to the real party in interest. In its motion, Defendant states that Wyrick is entitled to make OPA claims only for damage done to his own land, to the crops growing thereon, and his two-thirds share of the crops standing on his landlords' land at the time of the flood. However, it argues that Wyrick cannot assert claims for damage done to his landlords' land or their one-third shares in the crops growing thereon on July 1.

**ANALYSIS**

Rule 17 of the Federal Rules of Civil Procedure requires that all actions be brought by the real party in interest.[1] To determine whether this requirement has been satisfied, "the court must look to the substantive law creating the right being sued to see if the action has been instituted by the party possessing the substantive right to relief."[2] Here, Plaintiff Wyrick is attempting to recover damages under the Oil Pollution Act of 1990. Under the OPA, damages for injury to, or economic losses resulting from destruction of, real or personal property are recoverable by a claimant who owns or leases that property.[3] As a result, Wyrick's ability to assert claims for damage done to a particular piece of property is contingent upon whether he has an interest in that property.

---

[1] Fed. R. Civ. P. 17(a).

[2] 6A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1544, at 340 (2d ed. 1990); *accord Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984).

[3] 33 U.S.C. § 2702(b)(2)(B).

To determine whether Wyrick has an interest in the property that he is seeking damages for, the Court must look to state law.[4] Because the damaged property is located in Oklahoma, the Court will apply Oklahoma law.

**Landlords' Land**

In its motion, Defendant argues that Wyrick cannot seek recovery for damage done to his landlords' land because he is only a sharecropper, and sharecroppers have no interest in their landlords' land. In support of its contention, Defendant cites to *Taylor v. Riggins*[5]. In *Taylor*, the Court stated:

> [T]he rule seems to be, that where the landlord furnishes the land and supplies, and other things of that sort, and keeps general supervision over the farm, and agrees to pay a certain portion of the crop to the laborer for his work, the laborer is then a cropper. A cropper, then, is a laborer who is paid for his labor with a share of the crop, which he helps to harvest. He is not a tenant, since he has no estate in the land, nor in the crop till the landlord assigns him his share. He is as much a servant as if his wages were fixed and payable in money.[6]

Defendant contends that the agreements between Wyrick and his landlords "fit perfectly the *Taylor* Court's description of sharecropper agreements."

In his response, Wyrick does not challenge Defendant's assertion that a cropper can have no interest in their landlord's land. However, he does contest Defendant's claim that he is a cropper. Wyrick contends that the agreements between he and his landlords are nothing like the agreement discussed in *Taylor*. According to Wyrick, his landlords, unlike the landlord

---

[4]*See United States v. Craft*, 535 U.S. 274, 278 (2002).

[5]263 P. 146 (Okla. 1928).

[6]*Id.* at 147 (quoting *Chickasha Gas & Elec. Co. v. Linn*, 195 P. 769, 770 (Okla. 1921)).

described in *Taylor*, did not provide all of the necessary supplies nor, more importantly, did they exert any control over the farming operation.

Based on the limited record now before it, the Court agrees with Wyrick that he is not a cropper. The facts of this case seem to be very different than those in *Taylor*. To begin with, Wyrick's landlords appear to have exerted no control over him. Furthermore, except for covering one-third of the chemical and fertilizer costs and providing the land, Wyrick's landlords provided no other supplies or equipment. In light of these facts, the Court finds that Wyrick is not a mere cropper. As the sole basis for Defendant's motion to not allow Wyrick to assert a claim for damage done to the land owned by others is that Wyrick was a cropper, therefore, the Court denies this portion of Defendant's motion.[7]

**Landlords' One-Third Shares**

Wyrick contends that he is the real party in interest with regard to his landlords' shares in the crops growing on their land because until the crops are harvested they have no ownership interest in them.[8] In support of this contention, Wyrick cites to *Fletcher v. City of Altus*[9] and *Yeldell v. Hines*[10]. In its reply, Defendant argues that Wyrick's reliance on these cases is misplaced. According to Defendant, *Fletcher* and *Yeldell* merely establish that a tenant farmer can maintain an action for damage done to his proportionate share of the crop.

---

[7] The fact that Wyrick is not a cropper does not necessarily mean that he has an interest in the land. Assuming for the moment, though, that Wyrick does have an interest, the Court believes, based on the showing made thus far, that it is very unlikely that Wyrick will be able to recover damages for his claimed (though unquantified) "Future Loss and Land Value Decline for Contaminants."

[8] Wyrick has not claimed that his landlords have assigned to him their interest in their one-third shares.

[9] 108 P.2d 781 (Okla. 1940).

[10] 174 P. 229 (Okla. 1918).

The Court agrees with Defendant that the cases cited by Wyrick do not stand for the proposition that Wyrick claims they do. Another Oklahoma case that may be instructive is *Oklahoma Railway Co. v. Boyd*[11]. In *Boyd*, the Supreme Court of Oklahoma declared that a tenant farmer, who is operating under an agreement that states that the farmer will gather and market all of the crops, and pay a cash rental equal to one-third of the proceeds realized from the sale of the crops, is the sole owner of the crops until they are harvested.[12] However, it is not clear to the Court that those arrangements are present here. Furthermore, the precedential value of *Boyd* was called into question, albeit indirectly, by *City of Altus v. Fletcher*[13]. There, the court stated that a tenant in possession of farm land on a sharecrop basis is the owner of his proportionate share of the unharvested crop.[14] This statement implies that a tenant farmer is not the owner of the share of the unharvested crop that is not his; presumably the landlord would have that interest in an unharvested crop. In light of the position taken by the court in *Fletcher*, the Court finds that it is unclear whether, under Oklahoma law, a tenant farmer is the sole owner of the crops he is raising until they are harvested.

In cases where it is not clear how a state's high court would resolve an issue, the Court can look to "decisions of other courts [to] inform [its] analysis."[15] Based on the Court's independent review, it appears that the majority of jurisdictions that have addressed this matter have found that a landlord does have an ownership interest in the unharvested crop equal to his

---

[11] 282 P. 157 (Okla. 1929).

[12] *Id.* at 158 (syllabus by the court).

[13] 142 P.2d 614 (Okla. 1943).

[14] *Id.* at 614 (syllabus by the court).

[15] *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1575 (10th Cir. 1984).

share of the proceeds.[16] The Court is persuaded by the logic in recognizing that both the tenant farmer and his landlord have an interest, and believes that if the Supreme Court of Oklahoma were to decide this issue today, it would adopt the position taken by the majority of its sister jurisdictions. In light of this conclusion, the Court finds that the landlords, not Wyrick, are the real parties in interest with respect to their one-third shares.

The fact that Wyrick is not the real party in interest, though, does not necessarily mean that he cannot assert claims on behalf of his landlords for damage done to their shares of the unharvested crops. Under Fed. R. Civ. P. 17(a)(3), an action may be maintained in the absence of the real party in interest if the real party in interest ratifies it. Therefore, the Court will afford Plaintiff Wyrick thirty (30) days from the date entry of this Order to obtain appropriate ratifications from his landlords and file them with the Court.[17] If Wyrick is successful in this endeavor, Defendant's motion, as it relates to the landlords' share in the unharvested crops, shall be deemed denied. However, if such ratification is not received within the specified time frame, Defendant's motion shall be deemed granted.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant's motion to limit the claims of Plaintiff Larry Wyrick to the real party in interest (Doc. 67) is hereby DENIED in part.

**IT IS FURTHER ORDERED** that Plaintiff Wyrick shall, within thirty (30) days from the date entry of this order, submit appropriate ratifications from his landlords.

---

[16]*See Sayers v. Mo. Pac. Ry. Co.*, 82 Kan. 123, 123, 107 P. 641, 642 (1910); *Joubert v. State*, 345 So.2d 220, 225 (La. Ct. App. 1977); *Tex. Pac. Ry. Co. v. Saunders*, 18 S.W. 793, 793 (Tex. Ct. App. 1892). *But see Heeb v. Prysock*, 245 S.W.2d 577, 579 (Ark. 1952) (stating that "when the sharecropper is to pay one-half the crop for the use of the land, with the tools and team and feed therefor, then the title to the crop is in the tenant").

[17]*See, e.g., Arabian Am. Oil Co. v. Scarfone*, 713 F. Supp. 1420, 1424 (M.D. Fla. 1989).

**IT IS SO ORDERED.**

Dated this 5th day of April, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE